# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### January 8, 2008 Session

## DOUG SATTERFIELD v. BREEDING INSULATION COMPANY ET AL.

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Circuit Court for Blount County**
**No. L-14000     W. Dale Young, Judge**

---

**No. E2006-00903-SC-R11-CV - Filed September 9, 2008**

---

JANICE M. HOLDER, J., concurring and dissenting.

I fully concur in the majority's conclusion that Alcoa owed a duty to Ms. Satterfield to take reasonable steps to prevent her from suffering harm as a result of the risks created by the operation of Alcoa's facility. I write separately to express my belief that any discussion of foreseeability in the context of duty encroaches upon the role of the finder of fact. In doing so, I will explain the considerations that I believe are relevant to a duty analysis.

This Court has previously stated that the existence of a duty depends upon the presence of a relationship between the plaintiff and the defendant that justifies the imposition of a legal obligation on one of the parties. E.g., Staples v. CBL & Assocs., Inc., 15 S.W.3d 83, 92 (Tenn. 2000) (Holder, J., concurring); Bradshaw v. Daniel, 854 S.W.2d 865, 869-70 (Tenn. 1993). Sections II and III of the majority opinion properly clarify that a duty to act reasonably generally arises out of the defendant's risk-creating conduct rather than the relationship between the parties. Accordingly, in cases of misfeasance, i.e., cases in which the defendant has allegedly created a risk, there is no need to examine the relationship between the parties. See West v. E. Tenn. Pioneer Oil Co., 172 S.W.3d 545, 551 (Tenn. 2005). The existence of a relationship between the parties becomes relevant to our analysis of duty only if the plaintiff alleges that he or she was harmed as a result of the defendant's nonfeasance. In other words, the relationship between the parties is important only insofar as it may provide an exception to the no-duty-to-rescue rule.

Although I concur in the majority's clarification of these issues, I am unable to agree with the remainder of the majority's duty analysis. Specifically, I remain concerned about the role that foreseeability plays in the majority's understanding of duty. Foreseeability enters the majority's analysis in two related ways. First, foreseeability forms a part of the majority's basic explanation of when a duty arises. For example, the majority states that "'all persons have a duty to use reasonable care to refrain from conduct that will foreseeably cause injury to others.'" (quoting Burroughs v. Magee, 118 S.W.3d 323, 328 (Tenn. 2003); Bradshaw, 854 S.W.2d at 870) (emphasis added). Second, foreseeability is a key component of the public policy balancing test employed by the majority. Burroughs, 118 S.W.3d at 329; McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995).

As I have often stated, the foreseeability of an injury or risk is more properly considered an element of breach of duty or proximate cause. Hale v. Ostrow, 166 S.W.3d 713, 720 (Tenn. 2005) (Holder, J., concurring and dissenting); Staples, 15 S.W.3d at 93 (Holder, J., concurring); accord W. Jonathan Cardi, Purging Foreseeability: The New Vision of Duty and Judicial Power in the Proposed Restatement (Third) of Torts, 58 Vand. L. Rev. 739, 744-50 (2005). This observation is important primarily because the existence of duty is determined by courts as a matter of law while breach of duty and proximate cause are fact-based inquiries to be determined by juries. West, 172 S.W.3d at 556 (Tenn. 2005) (observing that breach of duty and proximate causation are factual determinations); Staples, 15 S.W.3d at 89 (holding that existence of duty is a matter of law). By incorporating foreseeability into an analysis of duty, the majority transforms a factual question into a legal issue and expands the authority of judges at the expense of juries. Gipson v. Kasey, 150 P.3d 228, 231 (Ariz. 2007); Cardi, supra, at 741. It is with good reason that determinations of breach of duty and proximate cause, and therefore foreseeability, have traditionally been entrusted to juries. See City of Elizabethton v. Sluder, 534 S.W.2d 115, 117 (Tenn. 1976) (noting that foreseeability is a jury issue). A collection of twelve people representing a cross-section of the public is better suited than any judge to make the common-sense and experience-based judgment of foreseeability. Cardi, supra, at 799-800; see also Thomas C. Galligan, Jr., A Primer on the Patterns of Negligence, 53 La. L. Rev. 1509, 1527-28 (1993) (arguing that the determination of proximate cause requires a "visceral" and fact-specific judgment of what is fair and suggesting that juries are better equipped to make such judgments).

The majority attempts to support the integration of duty and foreseeability by arguing that foreseeability plays a different role in the duty context than it does in the context of breach of duty or proximate cause. In support of its position, the majority cites to cases that propose a distinction between the foreseeability of a general threat of harm to others and the foreseeability of the specific harm suffered by the plaintiff. McCain v. Fla. Power Corp., 593 So. 2d 500, 502-04 (Fla.1992); Knoll v. Bd. of Regents of Univ. of Neb., 601 N.W.2d 757, 763 (Neb. 1999). According to these cases, the former analysis is relevant to duty while the latter is relevant to proximate cause. McCain, 593 So. 2d at 502-04; Knoll, 601 N.W.2d at 763. The majority places this distinction in its own terms, stating, "For the purpose of determining whether a duty exists, the courts' consideration of foreseeability is limited to assessing whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it."

While I agree that the distinction between general and specific foreseeability can be made in theory, I disagree with the assertion that general foreseeability is relevant to duty. Insofar as the distinction between forms of foreseeability can be made, the general foreseeability of harm created by the defendant's conduct is relevant to determining whether the defendant behaved reasonably–that is, whether the defendant breached his or her duty. Cardi, supra, at 746-47. The distinction should have little practical consequence, however, because the jury should be responsible for making both foreseeability determinations.

However valid the distinction between general and specific foreseeability may be in theory, the distinction is difficult, if not impossible, to apply in practice. Consider, for instance, the facts

in the present case. Alcoa operated a facility that used materials containing asbestos and allegedly took no precautions to ensure that employees did not transfer asbestos outside the facility on their clothes. According to the majority, these facts pose two different questions: whether the "general" harm to people outside the facility was foreseeable and whether the "specific" harm to the daughter of one of its employees was foreseeable.

In my view, these questions are so interrelated that they are virtually inseparable. If Alcoa creates a foreseeable risk to members of the public by allowing employees to leave its facility with asbestos on their clothes, then it also creates a foreseeable risk to a specific person, the daughter of an employee. The contrary is also true. If Alcoa's behavior creates a foreseeable risk to the daughter of an employee, it will also create a foreseeable risk to other members of the public who come in contact with Alcoa's employees. To answer one question is also to answer the other.

By requiring judges to determine general foreseeability, the majority's opinion forces trial judges to base their decision-making on a razor thin distinction and encourages judges to make factual determinations relevant to breach of duty. The majority's formulation of the distinction is equally problematic because it requires courts to evaluate "whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it." In my view, any inquiry into the probability, likelihood, or foreseeability of harm, however the issue is framed, requires courts to draw overly fine distinctions and, worse yet, to encroach upon the proper function of juries.

I would eliminate foreseeability from the duty analysis entirely and conclude that a duty of reasonable care arises whenever a defendant's conduct poses a risk of harm to persons or property. This approach is consistent with the formulation of duty found in the Restatement (Third) of Torts. According to the latest version of the Restatement, "[a]n actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm." Restatement (Third) of Torts: Liability for Physical Harm § 7(a) (Proposed Final Draft No. 1, 2005) [hereinafter Restatement (Third) of Torts]. Under this approach, the existence of a duty generally would be presumed as long as the plaintiff has alleged that he or she was harmed by the defendant's conduct.

Like the majority of the Court, I believe that in some cases public policy considerations may warrant a conclusion that a defendant owes no duty to a plaintiff despite the defendant's creation of a risk of harm. Unlike the majority, I would not base the public policy analysis on foreseeability. I would follow the Restatement (Third) of Torts and conclude that "[i]n exceptional cases, when an articulated countervailing principle or policy warrants denying or limiting liability in a particular class of cases, a court may decide that the defendant has no duty or that the ordinary duty of reasonable care requires modification." Restatement (Third) of Torts § 7(b). Under this framework, no-duty rules would be created "only when a court can promulgate relatively clear, categorical, bright-line rules of law applicable to a general class of cases." Id. cmt. a. Furthermore, no-duty rules "should be articulated directly without obscuring references to foreseeability." Id. cmt. j.

As I understand it, the majority's position is that foreseeability remains a useful concept in our public policy analysis because it serves as a stabilizing principle that prevents our duty analysis

3

from becoming "anarchic" or "free-floating." In my view, however, this Court has shown itself to be quite capable of creating principled no-duty rules without reference to foreseeability. For example, in Blair v. Campbell, 924 S.W.2d 75, 76-78 (Tenn. 1996), we concluded that property owners owe no duty to protect a contractor from a property defect that the contractor has undertaken to repair. In Carson v. Headrick, 900 S.W.2d 685, 690 (Tenn. 1995), we concluded that citizens owe no duty of reasonable care to police officers responding to a call for assistance. In Ezell v. Cockrell, 902 S.W.2d 394, 397-400 (Tenn. 1995), we reaffirmed the doctrine that public officials cannot be held liable for harms caused when the public official breaches a duty owed to the public at large. Each of these cases contains a straightforward discussion of the relevant policy considerations without discussing foreseeability or encroaching upon the jury's role in resolving factual disputes. Furthermore, each decision is firmly grounded in common-law principles and avoids the sort of judicial excesses feared by the majority. Accordingly, I believe these three cases are consistent with the methodology recommended by the Restatement (Third) of Torts and represent an approach that is superior to the balancing test currently employed by the majority of the Court.

Moreover, I am concerned that the current emphasis placed on foreseeability presents an opportunity for the sort of "free-floating" analysis that the majority wishes to avoid. The concept of foreseeability is a notoriously malleable and indefinite concept. See Thing v. La Chusa, 771 P.2d 814, 830 (Cal. 1989) (observing that "there are clear judicial days on which a court can foresee forever"); William H. Hardie, Jr., Foreseeability: A Murky Crystal Ball for Predicting Liability, 23 Cumb. L. Rev. 349, 410 (1992/1993) (concluding that "[f]oreseeability has become so elastic as to lose all meaning"). As a consequence, reliance on foreseeability reduces the clarity and certainty of negligence law and gives judges such broad discretion that similarly situated parties may often be treated differently. Cardi, supra, at 740-41, 792-93. It is also possible that the broad discretion afforded by the majority's foreseeability analysis can mask the policy considerations that actually motivate judicial decision-making. Gipson, 150 P.3d at 231; Cardi, supra, at 740-41, 792-93; Galligan, supra, at 1523 (explaining that judges should state public policy choices clearly without relying on malleable words like "foreseeable" or "unforseeable"). Adopting the Restatement (Third) of Torts would increase judicial transparency and clarity by requiring that judges frankly and openly discuss the policy considerations that underlie any no-duty determination.

To be candid, I must acknowledge that my understanding of duty remains a minority position. I firmly believe, however, that analyzing foreseeability in the context of duty is inherently problematic and that the Restatement (Third) of Torts presents a wiser approach. It is my hope that this approach will eventually be adopted in Tennessee. Until that day arrives, I will remain unable to concur in this Court's duty jurisprudence. Accordingly, I respectfully dissent.

_____
JANICE M. HOLDER, JUSTICE

4